UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

P.C.B., Jr., a minor, by his legal
guardian, Commissioner of the
Minnesota Department of
Human Services,

        Plaintiff,

v.                                                   **MEMORANDUM OPINION
                                                     & ORDER**
                                                     Civil File No. 03-6368 (MJD/JGL)

OFFICER TOU M. CHA, and
the CITY OF ST. PAUL,

        Defendants.

_____

Richard W. Hechter, Thill Law Firm, P.A., counsel for Plaintiff.

Manuel Cervantes, Portia Hampton-Flowers, St. Paul City Attorney, counsel for Defendants.

_____

## I.   INTRODUCTION

This case is before the Court on the Defendants' Motion for Partial Summary Judgment. Plaintiff, through his guardian, filed a seven-count Complaint alleging excessive force in violation of Section 1983 (count I); failure to adequately train and supervise (count II); negligence (count III); assault & battery (count IV); false imprisonment (count V); negligent hiring, supervision, &

1

retention (count VI); vicarious liability against the City (count VII), all stemming from an incident at Ramsey Junior High between Plaintiff and Defendant Cha, the School Resource Officer. Defendants Cha and the City now move for partial summary judgment on all claims **but** Counts I and IV. Plaintiff has agreed to voluntarily dismiss the claim for failure to adequately train and supervise (count II) and the claim for negligent hiring, supervision, and retention (count VI). The Court heard arguments on this Motion on May 6, 2005.

## II. FACTUAL BACKGROUND

Officer Cha was the assigned School Resource Officer (SRO) at Ramsey Junior High in St. Paul in December, 2002, having served as the SRO at two other St. Paul schools before starting this assignment. The SRO at any school operates as a security officer, "making arrests, interviewing students," and securing the school "for any troubles and problems from students or any outsiders."

Plaintiff was a student at Ramsey Junior High in December, 2002, along with his sister, M.F. On December 9, 2002, Plaintiff, his sister, and his friend J.N. were eating lunch in the school lunchroom. Plaintiff agreed to and completed a dare from J.N. involving food. J.N. had agreed to pay Plaintiff $20 if he completed the dare, but then refused to pay. While Plaintiff did not argue with J.N. over his refusal to pay the bet his sister, M.F., demanded that J.N. turn over the money, eventually trying to get the money out of J.N.'s hand and then out of

his pants pocket. At the time, there were approximately 250 students in the lunchroom, with the lunch period for that group nearing its end. J.N. and M.F. became engaged in a struggle, and as it continued, 7th Grade Administrator Daniel Vaagenes intervened in an attempt to separate the students. When Vaagenes was unsuccessful and recognized that the lunchroom had to be cleared for the next group without letting the continuing struggle get out of control, he signaled Officer Cha, who was in the lunchroom, to come over and intervene.

At the time, Officer Cha was wearing a full weapons belt, with a gun, baton, and mace. Officer Cha first intervened with M.F., attempting to remove her hands from J.N.'s pants. M.F., according to testimony in the record, went "wild with anger," became aggressive and profane, and combative. Officer Cha therefore put her down on the floor by tripping her, although some evidence in the record saw this action as more than just tripping. Once Plaintiff saw Officer Cha take down his sister, he moved closer to see "what was the problem, . . . Why is all this stuff happening[.]" Vaagenes, who testified that Plaintiff was on the scene suddenly, told Plaintiff not to interfere. During the exchange between Plaintiff and Vaagenes, M.F. escaped from Officer Cha's grasp and ran out of the lunchroom. As his sister left the lunchroom, Plaintiff followed her, thus moving between Officer Cha and M.F.

There is a dispute in the record as to who tapped who on the shoulder first.

Plaintiff testified that Officer Cha tapped him on the shoulder first. Officer Cha testified that Plaintiff either tapped or grabbed the Officer's shoulder. Either way, with the struggle with M.F. continuing, with Plaintiff trying to intervene, and with a growing concern for safety given the weapons on his belt, Officer Cha grabbed Plaintiff by the collar of his shirt, tripped him, and flipped him to the ground. As Plaintiff fell, Officer Cha "knew that he's going to hit his head on the floor, so [he used his] right foot and try to protect him – protect his head from hitting the floor." That move was unsuccessful because Plaintiff's head hit the floor, he suffered a concussion, and was knocked out.

After Plaintiff was on the ground, Officer Cha handcuffed him and removed him from the lunchroom. There is some dispute in the record about when Plaintiff regained consciousness and whether he was dragged unconscious from the lunchroom.

Some months after the incident, Plaintiff pleaded guilty in Ramsey County District Court to a reduced charge of disorderly conduct. As part of his plea, Plaintiff admitted that his behavior "was loud and boisterous and could have annoyed or bothered or inflamed people around" him; and that he stepped between Officer Cha and his sister.

Plaintiff retained Philip Corrigan, a former police officer for the City of Tucson, Arizona, as an expert. In Corrigan's opinion, Cha's use of force in flipping

Plaintiff to the floor was both excessive and unreasonable. Corrigan also relied on the fact that Plaintiff was rendered unconscious as an indication of the excessiveness of the force, although Corrigan admitted that there was no indication Officer Cha flipped Plaintiff to the floor "so purposefully that his head would hit the floor." In Corrigan's opinion, the maneuver that Officer Cha performed in flipping Plaintiff to the ground, and then in dragging Plaintiff out when he was unconscious and handcuffed, was unreasonable.

Corrigan agreed that the officer's paramount concern is to control the situation. He also agreed that some percentage of reasonable officers faced with the same situation that Officer Cha faced would have done what Officer Cha did. Finally, he acknowledged that a reasonable officer would take into account all of the circumstances surrounding the incident, the number of people involved, the number of spectators, the levels of resistance, compliance, and agitation in deciding how to respond to a situation.

### III. DISCUSSION

Defendants' Motion for Partial Summary Judgment does not include the claim for excessive force (Count I), or the claim for assault and battery (Count IV). And, given Plaintiff's agreement to dismiss them, the claims for failure to adequately train (Count II) and inadequate hiring and supervision (Count VI) are no longer at issue and partial summary judgment will be granted on those claims.

Thus, the Court must decide whether there are disputed issues of material fact that would allow a reasonable jury to find in Plaintiff's favor on the claims for negligence, false imprisonment, and the City's vicarious liability. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Clardy v. City of St. Paul*, No. 01-CV-1275, 2003 WL 21805203 at *3 (D. Minn., Aug. 4, 2003).

The City argues that the Motion should be granted because: (1) Plaintiff has not adequately pled a negligence claim since he improperly relies on intentional conduct allegations as the factual basis for the claim; (2) the false imprisonment claim is barred by the doctrine of collateral estoppel; and, (3) the negligence and false imprisonment claims are barred by the doctrine of official immunity.

### A.     **Count III: Negligence.**

Defendants move for summary judgment on Plaintiff's negligence claim against Officer Cha, arguing that intentional torts and negligence are mutually exclusive, and therefore, Officer Cha's actions support either the negligence or the intentional tort claims, but not both.  In the alternative, Defendants argue that there is no evidence of causation, i.e., there is no evidence that the actions that Plaintiff alleges were negligent were the cause of any injury to Plaintiff.

Defendants argue that Plaintiff's Complaint frames Officer Cha's conduct in terms used to support the intentional tort claims, e.g., "assault and battery,"

"excessive force." In his complaint, Plaintiff alleged that Officer Cha acted negligently when he "stopped, detained and used excessive and unreasonable force" against Plaintiff. Complaint, ¶ 24. There are no other allegations in the Complaint regarding any duty the officer owed to Plaintiff, or a breach of that duty, although Plaintiff alleges in the factual section that Officer Cha "acted both negligently and intentionally." Complaint, ¶ 13.

This is not a Motion to Dismiss, in which liberal pleading standards might govern. Instead, given that this case is at the summary judgment stage, and that Plaintiff has asserted both negligence and intentional tort claims from the outset, the Court must decide whether there are genuine issues of material disputed fact on which a reasonable jury could return a verdict of negligence. At the summary judgment or later stage of a case, courts have dismissed either the negligence or the intentional tort claims because eventually "the same facts cannot give rise to causes of action both for intentional tort and negligence." *Byers v. Spaulding*, 725 S.W.2d 893, 895 (Mo. App. 1987) (upholding directed verdict for defendants on Plaintiffs' claims of "abandonment as an intentional tort" and "abandonment as negligence per se"). *See also Pravda v. City of Albany, New York*, 956 F. Supp. 174, 183 n.9 (N.D.N.Y. 1997) (noting, on summary judgment motion, "Plaintiff's assault & battery and his negligence claims arise out of the same underlying factual allegations. It is well settled that negligence and assault and battery

7

claims are mutually exclusive. . . . Therefore, the court finds that all of Plaintiff's negligence claims must be dismissed"); *Hockensmith v. Brown*, 929 S.W.2d 840, 845 (Mo. App. 1996) (granting summary judgment on negligence claims since evidence "of an act purposely done negates negligence," and plaintiff "cannot recover under a negligence theory if the only evidence is that of an intentional tort."); *Cf. BP Chem. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002) (noting, on motion to dismiss, "there is generally no claim of negligence that flows from intentionally tortious conduct").

Plaintiff has admitted, in his opposition brief, that Officer Cha's use of "excessive force in terms of flipping plaintiff hard to the ground, knocking him out; and assaulting and battering plaintiff, are all tantamount to intentional tort." [Pls. Opp'n Br. at 8]. Thus, to the extent that Plaintiff's negligence claim is based on the act of flipping Plaintiff to the ground, knocking him out, and battering him, summary judgment will be granted dismissing that claim as inconsistent with the intentional tort claim of assault and battery.

Plaintiff asserts, however, that the separate act of removing him from the lunchroom after he was unconscious supports a negligence claim apart from Officer Cha's intentional acts. At the hearing on this Motion, however, Plaintiff conceded that there was no evidence in the record to support the claim that Plaintiff was injured as a result of that act, i.e., that removing him from the

8

lunchroom caused his injury.

The Court questions whether Plaintiff's negligence and intentional tort claims can be divided in such a fine fashion. However, the Court need not resolve this problem because even assuming such a division can be made, the Court finds there are no disputed factual disputes on the element of causation. Plaintiff concedes there is no evidence in the record, from an expert or from medical records, to support this separate theory of negligence. While an expert may not always be required in order to demonstrate causation, *In Re Baycol Prods. Litigation*, 321 F. Supp.2d 1118, 1124-25 (D. Minn. 2004) (citing cases), an expert is required where ordinary persons would not possess the requisite knowledge and thus would engage in speculation in their decision making. *Id.* Here, apart from the issue of whether causation would be within the knowledge of a reasonable jury, Plaintiff has pointed to no evidence in the record that would allow a reasonable jury to conclude that the cause of his injuries was Officer Cha's decision to remove him from the lunchroom and leave him restrained in the Principal's office, rather than the act of flipping Plaintiff to the ground.

Thus, to the extent that Plaintiff argues there is a separate negligence claim apart from Officer Cha's alleged intentional acts, the Court will grant summary judgment on that negligence claim because the undisputed facts demonstrate that no reasonable fact finder could find in plaintiff's favor on causation.

### B. Count V: False imprisonment claim

The claim for false imprisonment requires evidence of "words or acts of the defendant intended to confine the plaintiff, (2) actual confinement, and (3) awareness by the plaintiff that he is being confined." *Cornelious v. Brubaker*, No. 01-1254, 2003 WL 21511125 at *12 (D. Minn., June 25, 2003). The Defendants argue that Plaintiff's guilty plea and subsequent adjudication on disorderly conduct are a complete defense to this claim, since he is now estopped from arguing that the underlying "arrest" was without probable cause. Plaintiff argues that Minnesota treats guilty pleas differently, and has declined to apply collateral estoppel where there was no trial on the merits.

The Eighth Circuit has held that a criminal conviction can bar the plaintiff from re-litigating elements of a civil claim that were decided in an earlier criminal proceeding, even if the criminal proceedings did not end in conviction. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006-07 (8th Cir. 2003); *Grant v. Fransworth*, 869 F.2d 1149, 1151 (8th Cir. 1989) (directed verdict was properly entered on plaintiff's civil claims for violation of 1st and 4th amendments where plaintiff was found guilty in state court of criminal interference with official acts); *Williams v. Shario*, 93 F.3d 527, 528 (8th Cir. 1996) (guilty plea forecloses a later civil claim that arrest was without probable cause); *Occhino v. Lannon*, 150 F.R.D. 613, 624 (D. Minn. 1993) (collateral estoppel precluded relitigation of basis for arrest, even

where plaintiff was not convicted of offense), *aff'd*, 19 F.3d 23 (8th Cir. 1994).

The cases cited by Plaintiff, *Glens Falls Group Ins. Corp. v. Hoium*, 200 N.W.2d 189 (Minn. 1972); and *Illinois Farmers Ind. Co. v. Reed*, 662 N.W.2d 529 (Minn. 2003) are factually sufficiently distinct to preclude their application to this case. In *Glens Falls*, the insurer sought to rely on its insured's criminal conviction to escape its obligation to defend and indemnify in a later civil suit. 200 N.W.2d at 190. Because the court found there were disputed facts on the issue of intent, even in light of the criminal record, it held that the insurer's obligation to defend remained. *Id.* at 192. In the *Illinois Farmers* case, the court declined to apply collateral estoppel to allow the insurer to escape its obligation to defend and indemnify its insured who was found guilty of the criminal charges because the insurer was not a party to the criminal proceedings. 662 N.W.2d at 533-34.

Plaintiff's false imprisonment claim is indistinguishable from the Eighth Circuit decisions that refuse to allow a plaintiff to re-litigate the basis for the arrest. Plaintiff has admitted to the conduct that justified the charge of disorderly conduct and the imposition of criminal penalties in a proceeding in which he was represented by counsel. He had a full and fair opportunity in that proceeding to challenge the basis for the disorderly conduct charge. He cannot now challenge the Officer's decision to take him into custody, rather than issue a citation, as suggested at the hearing on this Motion. The claim for false imprisonment must

therefore be dismissed.

### C. Count VII: Vicarious Liability.

The Defendants moved for summary judgment on Count VII, in which the Plaintiff alleged the City was vicariously liable for Officer Cha's actions "pursuant to the doctrines of Respondeat Superior and Master Servant." The City cannot, however, be held vicariously liable on Count I, the alleged violation of 42 U.S.C. § 1983. *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (noting municipality cannot be held liable under Section 1983 solely because it employs tortfeasor or under respondeat superior). This leaves only Count IV, for intentional torts. The parties did not address this Count in the Motion, nor did they address whether Officer Cha would be entitled to claim any immunity protection with respect to this Count. If Officer Cha is entitled to immunity from this claim, then the City would not have any vicarious liability. *See Nelson v. County of Wright*, 162 F.3d 986, 991 (8th Cir. 1998) (where officer entitled to official immunity on battery charge, county has no vicarious liability). However, the parties did not address this issue in the Motion papers and the Court therefore cannot rule on it at this time.

## IV. CONCLUSION

Based on all the files, records, and proceedings herein and for the reasons stated above, **IT IS HEREBY ORDERED** that the Defendants' Motion for Partial

Summary Judgment [Docket No. 30] is GRANTED IN PART and DENIED IN PART, as follows:

    1.  Partial Summary Judgment is GRANTED, dismissing Counts II, III, V, and VI.

    2.  Partial Summary Judgment is DENIED with respect to Count VII.


Dated: June 17, 2005

                                                  s/ Michael J. Davis
                                                  Michael J. Davis
                                                  United States District Court